IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEN THOMASON, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| v. | )  Case No. 10-cv-0412-MJR |
| | ) |
| THE CITY OF ST. ELMO, and LARRY TISH, Individually, and in his official capacity as Mayor of the City of St. Elmo, | ) ) ) |
| | ) |
|   Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

      Ken Thomason brought this action against the City of St. Elmo and Larry Tish for violation of his right to due process under the Fourteenth Amendment, 42 U.S.C. § 1983, and against the City of St. Elmo for violation of the Illinois Whistleblower Act, 740 ILCS 174/15. Defendants move to dismiss Counts 1 and 2 of Thomason's complaint (Doc. 9). For the reasons stated below, Defendants' motion is denied.

    **I.**    **Factual Allegations**

      The complaint <u>alleges</u> the following facts. Ken Thomason was the City's Chief of Police from February 1993 until November 2009. From April 2009 to the present, Larry Tish has served as the City's Mayor. Shortly after Tish's election in the spring of 2009, he met with Thomason and made clear and certain promises to Thomason of continued employment as Chief of Police.

Division 2, 2-2-6 of the Ordinances of the City of St. Elmo provides that the Mayor may remove City officers only "for cause." Also, pursuant to Section 3.1-35-10 of the Illinois Municipal Code, Tish was required to report to the aldermen or city council the real reasons for removal of the chief of police. At a meeting held on November 12, 2009, Tish provided the City's aldermen with "false, patently dishonest and pretextual reasons" for terminating Thomason's employment.

## II. Legal Standard

Although Defendants do not specify under which of the Federal Rules of Civil Procedure they bring their motion, the substance of the motion makes clear that they move pursuant to Rule 12(b)(6). A 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, **570 F.3d 811 (7th Cir. 2009).** Dismissal is warranted under Rule 12(b)(6) if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, **550 U.S. 544, 570 (2007);** *EEOC v. Concentra Health Services, Inc.*, **496 F.3d 773, 776 (7th Cir. 2007)**.

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. *Rujawitz v. Martin*, **561 F.3d 685, 688 (7th Cir. 2009);** *Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, **475 F.3d 824, 833 (7th Cir.),** *cert. denied*, **128 S. Ct. 357 (2007);** *Marshall v. Knight*, **445 F.3d 965, 969 (7th Cir. 2006).**

In *Tamayo v. Blagojevich*, **526 F.3d 1074, 1083 (7th Cir. 2008)**, the Seventh Circuit emphasized that even though **Bell Atlantic** "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required.

"A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id. Accord Pugh v. Tribune Co.*, **521 F.3d 686, 699 (7th Cir. 2008)("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").**

### III. Discussion

Defendants challenge Thomason's claims on three grounds: (1) Thomason had no property interest in his employment and is not entitled to due process of the type alleged; (2) Tish is entitled to qualified immunity; and (3) Thomason has made no effort to plead, nor could he plead, a proper *Monell* claim.

#### A. Whether Thomason has a property interest in his job

In analyzing any due process claim, this Court must answer two questions: "(1) whether the defendants deprived the plaintiff[] of a constitutionally protected liberty or property interest; and (2), if so, whether that deprivation occurred without due process of law." *Williams v. Seniff*, **342 F.3d 774, 786-87 (7th Cir. 2003)**.

In order to succeed on his due process claims, Thomason must first show that he possessed a constitutionally protected property interest in his job as chief of

3

police. *See Border v. City of Crystal Lake,* **75 F.3d 270, 273 (7th Cir. 1996);** *Wolf v. City of Fitchburg,* **870 F.2d 1327, 1330 (7th Cir. 1989)**. Property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* **408 U.S. 564, 577 (1972)**. Such protections may arise by way of statute, regulations, municipal ordinance, or by way of an express or implied contract. *Domiano v. Village of River Grove,* **904 F.2d 1142, 1147 (7th Cir. 1990)**. A property interest might also arise from a "common law" of employment established through rules or "mutually explicit" understandings between an employer and an employee. *Hermes v. Hein,* **742 F.2d 350, 355 (7th Cir. 1984)**.

Because Thomason was employed in Illinois, the Court first must look to Illinois law in determining whether he had a property interest in his position. *Border,* **75 F.3d at 273**. Illinois is an employment-at-will state. *Harris v. Eckersall,* **771 N.E.2d 1072, 1074-75 (Ill.App. 1st Dist. 2002)**. As a result of this presumption, in Illinois, "absent a specific contract to the contrary, employment contracts are terminable at will.... [A]n at-will employee can be terminated at any time for any reason or no reason, [and] an at-will employee has no property interest in continued employment." *Id.* **at 1075.** "[A]bsent legislative, administrative, or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time." *Id.* **(quoting** *Willecke v. Bingham,* **662 N.E.2d 122, 125 (1996) (citing** *Levin v. Civil Service Comm'n,* **288 N.E.2d 97 (1972))**.

Despite Illinois's presumption of "at-will" employment, Thomason asserts that his employment was not "at will" but that he had a property right to continued employment based on Division 2, 2-2-6 of the Ordinances of the City of St. Elmo, which provides:

> The Mayor shall have the power to appoint all officers of the City whose election is not provided for by statute or Ordinance with the approval of the Board of Aldermen and to remove the same *for cause*, in the manner prescribed by Statute. (emphasis added).

Defendants contend that this ordinance simply delineates one of the powers of the Mayor and does not state that the Mayor can remove the Police Chief *only* for cause.

In determining the meaning of a statute or ordinance, the Court looks first to its language, giving the words used their ordinary meaning. **Moskal v. United States, 498 U.S. 103, 108-09 (1990) (citations omitted)**. The Illinois Supreme Court has explained that, "[t]he primary objective in statutory interpretation is to give effect to the intent of the legislature." **Rexam Beverage Can Co. v. Bolger, 2010 WL 3312602, at *11 (7th Cir. 2010) (quoting** *Gardner v. Mullins,* **917 N.E.2d 443, 448 (2009))**. The Illinois Supreme Court applies the "plain, ordinary, and popularly understood meaning[s]" of the statute's terms. **Id. (citing** *Gardner***, 917 N.E.2d at 448)**. The Court assumes that the legislature did not intend "absurdity, inconvenience or injustice...." **Id. (citing** *People v. Glisson,* **782 N.E.2d 251, 255 (2002))**.

The plain meaning of the ordinance is that the Mayor can remove appointed City officers for cause. The Court cannot read the clause "for cause" out of the ordinance, nor can it read into the ordinance "without cause." To render "for

5

cause" mere surplusage contravenes "the interpretive canon that all words in a statute should, if possible, be given effect." *Commodity Trend Service, Inc. v. Commodity Futures Trading Com'n,* **233 F.3d 981, 989 (7th Cir. 2000) (citations omitted)**. The Court cannot imagine any other reason for the phrase "for cause" to be in the ordinance without venturing into the realm of absurdity.

For Thomason to have "a *constitutionally protected* property right in continued employment as the police chief ... he had to have a legitimate claim of entitlement to continue in the job." *Miyler v. Village of East Galesburg,* **512 F.3d 896, 898 (7th Cir. 2008) (emphasis in original).** "In order to create a property interest, a statute or ordinance must provide 'some substantive criteria limiting the state's discretion,' as for instance in a requirement that employees can only be fired 'for cause.'" *Id.* **(quoting** *Cain v. Larson,* **879 F.2d 1424, 1426 (7th Cir. 1989) and citing** *Bishop v. Wood,* **426 U.S. 341 (1976))**. This is precisely the case before the Court. The City's ordinance provides that the Mayor could only fire Thomason "for cause." As a result, Thomason had a constitutionally protected right in continued employment as the police chief. Stated another way, Thomason has shown that he had a property interest in his continued employment - that his employment was other than "at-will." *See Campbell v. City of Champaign*, **940 F.2d 1111, 1113 (7th Cir.1991) ("When the claimed deprivation is the loss of a job, the entitlement must be to the job, rather than to a set of disciplinary procedures.")**.

Because the Court has determined that Thomason had a property interest in continued employment under the ordinance, it need not also consider whether a property interest also arose as a result of an explicit understanding reached with Tish.

### B. <u>Whether Mayor Tish is entitled to qualified immunity</u>

The doctrine of qualified immunity protects government officials from monetary liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kitzman-Kelley*, 203 F.3d at 457 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine permits government officials the freedom to perform their discretionary functions without fear of potential liability for civil damages. *Elwell v. Dobucki*, 224 F.3d 638, 640 (7th Cir. 2000). *See also Landstrom v. Illinois Dept. of Children and Family Services*, 892 F.2d 670, 674 (7th Cir. 1990)(recognizing that the doctrine of qualified immunity protects public officers "from undue interference with their duties and from potentially disabling threats of liability"). Officials lose their immunity only when their conduct violates clearly established statutory or constitutional rights. *Elwell* at 640 (citing *Harlow*, 457 U.S. at 817).

The plaintiff bears the burden of establishing that a constitutional right was clearly established at the relevant time. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). The Seventh Circuit has explained:

> The plaintiff must demonstrate that at the time of the alleged unconstitutional actions of the defendants, there was clearly established law holding that their actions violated rights secured by the Constitution of the United States. *Kitzman-Kelley*, 203 F.3d at 459.

7

A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, **483 U.S. 635, 640 (1987).** To determine whether a right is clearly established, the courts look to controlling Supreme Court precedent and Circuit law. *Jacobs*, **215 F.3d at 767.**

As the above rules of law underscore, the qualified immunity analysis depends upon a sufficiently detailed exposition of the underlying facts of a particular claim. "[W]hen defendants do assert immunity, it is essential to consider facts in addition to those in the complaint." *Alvarado v. Litscher,* **267 F.3d 648, 652 (7th Cir. 2001).** However, as the Seventh Circuit repeatedly has held, on a motion to dismiss for failure to state a claim, the District Court may only review the plaintiff's complaint and certain exhibits or documents attached to the plaintiff's claim. *See, e.g., Beanstalk Group, Inc. v. AM General Corp.,* **283 F.3d 856, 868 (7th Cir. 2002);** *Rosenblum v. Travelbyus.com, Ltd.,* **299 F.3d 657, 661 (7th Cir. 2002) (citing** *Wright v. Assoc. Ins. Co., Inc.,* **29 F.3d 1244, 1248 (7th Cir. 1994)).**

For this reason, "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Id.* **at 651.** "Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: '[T]he plaintiff is not required initially to plead the factual allegations that anticipate and overcome a defense of qualified immunity.'" *Id.*

Upon the limited record before it on Defendants' motion to dismiss, this Court cannot conclude – at this stage of the proceedings – that the doctrine of qualified

8

immunity shields Tish's actions. Defendants' motion to dismiss based on qualified immunity must be denied.

### C. Whether Thomason has pled a proper *Monell* claim

To establish municipal liability under § 1983, a plaintiff must present sufficient evidence to show that an official policy, custom or practice caused the constitutional violation and, indeed, was "the moving force" behind the violation. *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). *See also Johnson v. City of Kankakee*, 260 Fed.Appx. 922, 926, 2008 WL 186939, at *3 (7th Cir. 2008) (citing *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978)). So, municipal liability is limited to action for which the municipality is actually responsible. *Estate of Sims*, 506 F.3d at 515 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "Misbehaving employees are responsible for their own conduct; 'units of local government are responsible only for their own policies, not for misconduct by their workers.'" *Id.* (citing *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). There is no *respondeat superior* liability for municipalities under § 1983. *Belcher v. Norton*, 497 F.3d 742, 754 (7th Cir. 2007).

"A plaintiff may establish municipal liability under § 1983 by showing '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir.

**2009) (quoting** *Estate of Sims***, 506 F.3d at 515**. For purposes of local governmental liability under § 1983, whether a particular official has final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik***, 485 U.S. 112 (1988)**. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Praprotnik***, 485 U.S. at 124 (citing** *Pembaur v. Cincinnati***, 475 U.S. 469, 483 (1986)(plurality opinion))**.

The City contends that it is entitled to dismissal because Thomason has not satisfied the requirements of *Monell*, in that a municipality can only be held liable for a constitutional violation when there is evidence of a written policy or custom or practice. According to the City, Thomason has not pled sufficient facts to show a plausible entitlement to relief.

The City's assertions fail because they do not take into consideration that a plaintiff may establish municipal liability under § 1983 by alleging that the constitutional injury was caused by a person with final policymaking authority. The Court cannot rule out on the record before it that Tish had final policymaking authority. Thomason has alleged that Tish reported false and fraudulent reasons for his removal to the Board of Aldermen, ultimately resulting in a violation of his procedural and substantive due process rights. As such, Thomason's allegations are sufficient to withstand Defendants' motion to dismiss.

### IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss Counts 1 and 2 (Doc. 9).

**IT IS SO ORDERED.**

**DATED this 29th day of October, 2010**

<u>s/Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Judge**